United States District Court

Southern District of Illinois

---

Kendrick Jackson

   Plaintiff

V.

JACOELINE A. LASHBROOK
MAJOR Edvald, Badge 683
MAJOR PAGE, Badge 652
KENTE E. BROOKMAN
JASON N. HART
JACOB L. LIPE badge, 10654
Officer Brown badge, 6006
John DOE,

Case No. 18-998-SMY

---

## THIS IS A Civil Rights Complaint

Pursuant to 42 U.S.C. Section 1983 to redress the deprivation, under color of State Law, of rights secured by the Constitution of the United States. the complaint request injunctive relief.

Plaintiff: Jhendrick Jackson, Register No R47228 Menard Correctional Center P.O. box 1000 Menard, Illinois 62259

Defendants:

A.) JACQELINE A. LASHBROOK - Warden at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

B.) Major Edvuld badge 683 - Shift Supervisor at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

C.) Major Page badge 652 - reviewing officer at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

D.) Kente C. Brookman - Chair person of the hearing committee at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

E.) Jason N. Hart - on the hearing committee at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

F.) Jacob L. Life badge 10654 - A Correctional officer at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

G.) Officer brown badge 6006 - Correctional officer at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

H.) John Doe - person on the hearing committee at Menard Correctional Center, P.O. box 1000, Menard Illinois, 62259.

1

Statement of claim:

Claim 1). Due-process violation, false imprisonment cruel and unusual punishment...

.) On november 28th 2017 defendant Major Edvald led a crew of officers to conduct a routine shakedown on 8 gallery in the north 1 uppers. defendants Jacob L. Life and Officer Brown entered plaintiff Jackson and his cellmates cell to conduct a routine shakedown, while the shakedown was being conducted, plaintiff Jackson and his celly was placed in a shower to await the conclusion of the shakedown.

.) During the conducted shakedown the defendants Jacob L. Life and officer Brown found an altered pair of toenail clippers underneath plaintiffs cellmates mattress, see exhibit A. after the shakedown was conducted, plaintiff and his cellmate were both brought back to the cell. defendant Major Edvald told plaintiff Jackson and his cellmate to pack up their shit, because they were both going to seg. plaintiff asked the gallery officer why were they going to seg, but the gallery officer claimed that he didn't know why.

1.) Plaintiff informed the defendants Jacob L, Life and officer Brown that his M.P.3. Player screen had been cracked due to the conducted shakedown. defendants Jacob L. Life and Officer Brown took down the plaintiffs name and ID number, and they were to make a report about it so that the M.P.3. Player could be fixed.

7.) Plaintiff and his cellmate were both taken to seg on november 28th 2017. Plaintiff was placed on 6 gallery in cell 648, the cell was unsanitary with dried smeared blood and feces on the wall by the sink and toilet area. the toilet and water pressure was low, and there were gnats and flying insects around the sink and toilet area.

2.

) Plaintiff received a copy of the disciplinary ticket the following day from the gallery officer, and he asked plaintiff to sign it, and the plaintiff did sign it, See exhibit A. Thats when plaintiff found out what he was being charged with, and why he was taken to Seg. Plaintiff was being charged with 104 Dangerous contraband and 202 Damage or misuse of property. Plaintiff was being charged for something that his celly had underneith his mattress, the disciplinary report clearly states that the contraband was found underneath plaintiffs cellmate's mattress. So plaintiff Jackson should not have been placed in segregation as a result of what his celly had See exhibit A.

) Plaintiff Jackson was called to see the adjustment committee on the 4th of December, Plaintiff explained to defendants Kente E. Brockman, Jason N. Hart, and John Doe of the hearing committee that the contraband did not belong to him, but that it did belong to his cellmate See exhibit B. Plaintiff also asked to see the contraband in question, but the contraband was never presented to the plaintiff during the hearing. Plaintiff explained to the Hearing Committee that they could fingerprint the contraband in question, and it would prove that the contraband didn't belong to him. Plaintiff explained to the Hearing committee that he was innocent of both charges against him, and that he had nothing to do with the contraband that was found underneath his cellmates mattress.

7.) Plaintiff Jackson explained to the Hearing Committee that whatever was found on his cellmates bunk belonged to his cellmate. Plaintiff also explained to the hearing committee that no contraband was found on or under his mattress. Defendant Kente E. Brockman advised the plaintiff that he could be released from Seg if his celly takes responsibility for the contraband in question. Plaintiff was not released and was found guilty by the adjustment committee of the charge of 104 Dangerous contraband See exhibit C.

8.) Defendants Jacob L. Life and officer Brown should not have put Plaintiff Jackson in the disciplinary report, because plaintiff had no contraband on or underneath his mattress, but due to the disciplinary report plaintiff Jackson was falsely imprisoned in confinement and hindering a legal process. Plaintiff lost commissary items due to being placed in segregation because of the unsubstantiated charges. Plaintiff also lost some of his clothing items, plus his visits was canceled due to the segregation time. Plaintiff was denied due process and was falsely imprisoned for something that he didnt do.

3.

) This act was clearly a violation of plaintiffs due process rights, along with falsely imprisoning him in segregation, Plaintiff is entitled to a legal process that isn't tainted, arbitrary or so impartial and biased towards him, or any other inmates in general, that it allows false disciplinary report to stand; that the hearing committee finds inmates guilty who are really not guilty to fulfill a quota to keep officers and staff happy.

9.) Plaintiff was sentenced to 6 months segregation, 6 months c grade, and 6 months commissary restriction by the defendants Shane E. Bloodman, Jason N. Hart, and John Doe of the hearing committee see exhibit c. Plaintiff Jackson used the prisoner grievance procedure available at menard Correctional center to try and solve the problem, on 12-15-17 Plaintiff Jackson presented the facts relating to the disciplinary report in a grievance see exhibit D. plaintiff explained that the contraband in question was found underneath his cellmates mattress, and that it didn't belong to him. Plaintiff explained that no contraband was found on or underneath his mattress, and that he shouldn't have been placed in seg for the contraband, nor been found guilty by the committee of something he didn't do or have.

11.) Plaintiff also explained in the grievance that he had been incarcerated at menard correctional center for 13 and a half years without getting into any trouble and was considered to be a model inmate. Plaintiff also requested that the disciplinary report and summary be expunged, and that the weapons violater title be taken off of his masterfile records. On January 4th 2018 the grievance officer claimed that my grievance was reviewed, and as a result plaintiffs grievance was denied on 1-11-18. Plaintiff also received a grievance officer response report, informing the plaintiff why the grievance was denied, the warden - cheif administrative officer agreed with the decision to deny my grievance, and signed her signature to aprive the decision see exhibit B. Plaintiff Jackson wrote to mental health, and to the adjustment committee for a seg time cut see exhibit P.

4.

a.) The grievance officer claimed that all the information regarding plaintiffs disciplinary report had been reviewed, and based on the nature of plaintiffs disciplinary history, the sanctions imposed by the adjustment committee should stand in accordance with DR 504. Plaintiff wrote mental health, the adjustment committee for a seg time cut see exhibit P. Plaintiff also wrote the Warden, and asked her to help him get out of seg, and to clear his name of any wrong doing. Plaintiff explained his situation to the Warden and told her that he was innocent of the charges in the disciplinary report. Plaintiff also informed Warden Lashbrook of the unsanitary living conditions he was dealing with in his cell, by writing the Warden, Plaintiff was hoping to get a response from her, but the Warden never responded to the Plaintiffs letters or the grievance.

13.) On January 22nd 2015 plaintiff files another grievance and sent it to the office of Springfield See exhibit C. Plaintiff also sent a copy of the grievance officer's response plus the grievance that was denied to Springfield. Plaintiff explained in the 2nd grievance to the office of Springfield that the disciplinary report clearly states that the contraband in question was found underneath plaintiffs cellmates mattress, and that he was innocent of the charge that he was found guilty of. Plaintiff also explained to Springfield that he had no knowledge that his cellmate had any contraband underneath his mattress.

14.) Plaintiff Jackson also asked the office of Springfield to expunge those charges from his masterfile records, and to take the weapons violator title off of his masterfile records. Plaintiff also sent a copy of the disciplinary report to Springfield so that they could review the report for themselves. Plaintiff explained to Springfield that he shouldn't be held responsible for something that his cellmate had under his mattress. Plaintiff Jackson wrote the warden five to six times about the inhumane living conditions that he was living in. Plaintiff Jackson never received a pillow while being in segregation. Plaintiff Jackson asked the officers and the gallery workers for a new mattress and a pillow, but Plaintiff never received a pillow or a mattress. Plaintiff also asked for a cell change due to the smeared feces and blood on the walls, plus the flying insects. Plaintiff was not moved to another cell, but was forced to continue to be subjected to the inhumane living conditions.

5.

.) Plaintiff explained to Springfield that his grievance was denied by the grievance officer because of an alledge disciplinary history See exhibit B. Plaintiff has no disciplinary history, this was Plaintiff first ticket in the 13 and a half years since he has been at Menard Correctional Center. On January 13th Plaintiff Jackson received a response from Springfield, informing him that his grievance was reviewed regarding the disciplinary report, and along with the Adjustment Committee Summary (201701830/1-Men), Springfield said that based on the review of all available information and a Copliance check of the procedural due process safeguards outlined in DR504, Springfield recommended that the grievance be affirmed due to non-compliance with DR504 30. unsubstantiated charges, the report and summary was to be expunged from plaintiff's masterfile records by the warden. The office of Springfield reviewed and made that decision on the 30th of January 2018 See exhibit E. I received the letter on the 13th of February See exhibit F.

6.) Defendant Jacqueline A. Lashbrook was to ensure that the report and summary was expunged from plaintiffs masterfile records See exhibit E. Plaintiff received the letter from Springfield on the 13th of February 2018, but plaintiff wasn't released from Seg until the 21st of February, 22 days later See exhibit F and exhibit H.

7.) Plaintiffs due-process was violated, because there wasn't a proper investigation done by the hearing Committee of the defendants Jacob L. Lipe and officer Brown and Major edvald. Plaintiff was sent to Segregation for something that he didn't do. Plaintiff spent 86 days in Segregation for the contrabands that was found underneath his cellmates mattress. Plaintiff was labled a weapons violator and was considered to be dangerous. Plaintiff was also put in stripes due to the unsubstantiated charges. Plaintiff spent the first 12 days in seg without a sheet, pillow, or blanket to cover up with. the mattress that plaintiff slept on was filthy and had no plastic covering on it, the mattress was a big dirty sponge, and it stunk real bad. Plaintiff suffered as a direct result of being subjected to those harsh and restricted conditions based on the disciplinary report and the charges that he was charged with, plus plaintiff was also denied a legal process by everyone named in this Complaint.

8.) The adjustment committee is suppose to follow the rules to make sure the charges of the report can be substantiated, and if evidence exist that proves innocence, that it be presented and not suppressed. The adjustment committee is suppose to be fair, and not just take the words of an officer and find inmates guilty based on that alone. Their has to be a proper investigation and the use of common-sense to come to a fair decision. Noone named in this claim gave plaintiff Jackson due-process and that was a violation of plaintiffs constitutional rights.

9.) The adjustment committee is suppose to come up with a reason or basis for why they came to the decision that they came to. They are suppose to have a reason independent of the officer being right or using his words to justify the decision they made. As a direct result of defendants Jacob Lilipe, officer Brown, and major edvald deliberate actions to deprive plaintiff of his constitutional rights by violating his due-process rights, plaintiff was given 6 months segregation, 6 months, c grade, and 6 months commissary restriction due to the unsubstantiated charges see exhibit C.

20.) Due-process is and has to be provided to inmates in the custody of I DOC. These practices of not complying with the rules and the law (due process) has been going on since at least 1981. when it became known by way of <u>Chavis V. Rowe</u> and the rule administrative register No 804 Sec II-B(9) was added to how adjustment committee were suppose to conduct themselves at the disciplinary hearing and it was implemented so that wardens would make sure that the committee abided by these administrative regulations that were designed to protect inmates such as plaintiffs 14th admendment due process rights. Plaintiff Jackson was forced to make a decision whether to send his commissary food items home, or have them destroyed see exhibit G.

7.

1.) Defendant Jacqueline A. Lashbrook was the warden at the time of the incident, she is legally responsible for the operations of Menard Correctional Center and all the inmates of that prison. Plaintiff had to cancel his visit that he was expecting in December due to the seg time he received from the adjustment committee, plaintiffs disciplinary report should not have been valid, due to the fact that the adjustment committee's final summary report wasn't signed by the defendants Kent E. Brookman, Jason N. Hart, nor the Warden, making the disciplinary report invalid see exhibit C.

2.) Warden Lashbrook allowed this environment to continue to deny plaintiff his right to due process. Plaintiff was considered to be a model inmate before he was falsely imprisoned in segregation. Plaintiff had been incarcerated at Menard for 13 and a half years without getting into trouble. Plaintiff was restricted from doing his legal work due to the unsubstantiated charges and the false imprisonment. Law Library only comes around once a week for 5 to 10 minutes, then they have to leave, so it was hard to really get any legal work done while plaintiff was in seg.

3.) Plaintiff Jackson was never presented with the evidence against him at the adjustment committee hearing. It is the plaintiffs right to see all evidence that the adjustment committee has against him, but that never happened. The office of Springfield found plaintiff not guilty of any wrong doing, so as a result of plaintiffs disciplinary report being dismissed and expunged, plaintiff should have been returned back to his original cell house in north 1 upper. Plaintiff Jackson was placed in the easthouse on the 21st of February, a high aggressive cellhouse, even though his charges and aggression level went from a 13 low to a 5 low. Plaintiff wrote the easthouse counselor, the major, the lieutenant, the warden, and plaintiff also wrote a grievance See exhibit I. As a result plaintiff was moved to the westhouse on the 6th of March, 13 days later See exhibit I.

8.

4.) Plaintiff wrote the warden, the Lieutenant, the major, the sargeant, and plaintiff sent another grievance to the office of springfield. Plaintiff believes that he is being retaliated against, because springfield expunged his ticket and freed him from segregation. plaintiff should have been placed back at North 1 uppers since the charges against him, and the ticket was expunged.

5.) Plaintiff 14th admendment rights were violated because he was denied due-process, and was falsely imprisoned in segregation for something that he didn't do. The charges made against the plaintiff, and the title of weapons violater could have been hurtful in Plaintiffs future appeals and motions in his criminal case.

Claim 2 - Conditions of confinement, 8th amendment violations subjecting plaintiff to cruel and unusual punishment:

1.) Plaintiff Jackson was falsely placed in segregation in North 2 cell 648. Where he was subjected to inhumane living conditions that deprived him of basic necessities of life, by placing him in a filthy cell, there was dried blood and feces smeared on the walls by the sink and toilet area. The sink and toilet pressure was low, so it was hard for the plaintiff to take care of his proper hygene.

2.) There was grafetti on the walls, and flying insects around the sink and toilet area, all of which carry diseases and germs. plaintiff had to spend 12 days sleeping on a dirty mattress with no pillow or sheets. plaintiff requested cleaning supplies to clean and sanitize his cell. but plaintiff was told no, he could not get anything to clean the cell with. the cells in segregation have no ventalation and they carry diseases and germs. Plaintiff finally received his personal property on the 9th of december, So he was finally able to properly clean the cell the best way that he could. but the plaintiff suffered from the insect bites due to spending the first twelve days in segregation without cleaning supplies.

9.

.) Plaintiff wrote a grievance concerning the conditions of the cell, but he never received a response about the grievance that was wrote about the inhumane conditions he was living in. So plaintiff spent the first 12 days in a dirty inhumane cell without any cleaning supplys, and without any hygene products. Plaintiff wrote the Warden at least 5 times, but got no response. Plaintiff also wrote a emergency grievance but never got a response back from anybody. Plaintiff was subjected to these conditions for 12 days until finally receiving his property.

u.) Plaintiff was bit by the flying insects in the cell, and was exposed to the smeared dried blood and feces that was on the walls for the first 12 days of Segregation. Plaintiff was behind the door, and was subjected to those inhumane living conditions, there is no ventalation behind the door in Segregation, so plaintiff was totally exposed to the smell of feces and subject to the flys and gnat bites.

.) Plaintiff put in a request slip to the health care unit, so that he could be seen by a doctor, but his request to see a doctor was ignored and he wasn't seen. Plaintiff was denied adequate medical care, and that caused plaintiff to suffer more from the inhumane living conditions, which caused cruel and unusual punishment. Inmates are suppose to receive cleaning supplys once a week, but it doesn't happen all the time in Segregation.

21.) Plaintiff Jackson had to eat his Statetrays in a filthy and inhumane cell for the first 12 days, with dried feces and blood smeared on the walls, and flying insects around the toilet and sink area. The toilet and sink pressure was low also, and that made it hard to keep up proper hygene. Plaintiff notified the Warden, the Lieutenant, the major, the counselor, and the Sargeant, and told all of them about the inhumane living conditions that he was being subject to. Plaintiff Jackson received no response back from the Warden, the Lieutenant, the major, the counselor, or the Sargeant. So plaintiff was forced to continue living in a inhumane cell, and was exposed to the diseases and the germs that the cell carried.

.) Plaintiff wrote a grievance and described in his grievance, that he clearly needed medical care, however his complaints were ignored by warden Lashbrook and staff. as a result of the ignored complaints, plaintiff was forced to suffer from the insect bites, and had to endure the smell of dried feces and blood that was smeared on the wall around the toilet and sink area. Plaintiffs grievance requesting medical care was suppose to be viewed by a Lashbrook representative or medical personnel to adequately assess plaintiffs medical needs to determine what caused or what course of medical treatment is needed to properly address plaintiffs serious medical needs. the grievance was never answered, and because warden Lashbrook did not follow their own policy and procedures dealing with medical issues in grievances, plaintiff was denied adequate medical care, and those actions caused the plaintiff to suffer physical pain, suffering and anguish.

Claim 3 - Retaliation, Subjected to cruel and unusual punishment:

.) Plaintiff Jackson was deprived of sleep due to the insect bites, and the noise and stress that he suffered in segregation. plaintiff was considered to be a model inmate because he was incarcerated at menard correctional center for 13 and a half years without getting into any trouble, or catching any disciplinary tickets.

2.) Plaintiff was labled a weapons violator, and was put in stripes, and was considered dangerous due to the unsubstantiated charges and the denied due process. the plaintiffs aggression level went from a 5 low to a 13 low, due to the adjustment committees finding plaintiff guilty of the unsubstantiated charges. Plaintiff spent 86 days in segregation for the unsubstantiated charge of 104 Dangerous contraband.

11.

.) Plaintiff Jackson received a letter from the office of Springfield on the 13th of Febuary, informing plaintiff that the ticket and charges had been expunged on the 30th of January see exhibit E and exhibit F. Plaintiff was not released from Seg until Febuary 21rst, 22 days later see exhibit N. Plaintiff lost 3 months of State pay due to the false charges brought against him, and the finding plaintiff guilty of the unsubstantiated charge of Dangerous Contraband 104.

.) Plaintiff suffered cruel and unusual punishment, and was denied due-process by all the defendants in this claim. Plaintiff shouldnt have been placed in segregation for something that his cellmate had underneith his mattress. Plaintiff was unjustly found guilty by the adjustment committee for a charge of 104 Dangerous Contraband, even though the contraband did not belong to the plaintiff, and that was not proper justice.

.) Plaintiff is now in the west cell house, but hopes to be returned to the north 1 uppers, or to the South Lowers. Plaintiff wrote the Warden Lashbrook, the major, the Lieutenant, and also sent the office of Springfield a grievance, because plaintiff believes that he is being retaliated against, even though he did nothing wrong.

.) It is the duty of the Warden and staff to protect, and to treat every inmate fair. Plaintiff Jackson prays that he will finally be treated fair, and not be retaliated against for defending his Constitutional rights to due-process.

Relief Requested:

) Plaintiff seeks compensation for the cruel and unusual punishment that he had to endure while in segregation, due to the dried smeared blood and feces on the walls, plus the flying insects and the bites that he endured from the insects, plus the deliberate violations of plaintiffs constitutional rights, and the retaliating against plaintiff for exercising his rights, also for the 86 days of false imprisonment that plaintiff served in segregation for something he didnt do. eight thousand and six hundred dollars.

) Plaintiff would like a transfer to another prison to get away from the defendants in this complaint.

) Plaintiff seeks the 3 months state pay that he lost due to the false inprissment of the defendants in this claim. 30 dollars

) Plaintiff seeks recovery cost for the broken M.P.3. Player that was broken during the routine shakedown on november 28th 2017, by defendants Jacob L. Life and officer brown, see exhibit J, exhibit K, and exhibit L, 74.99

) Plaintiff seeks compensation for the 22 extra days that he spent in seg, after springfield ordered his release. Plaintiff was ordered to be released on the 30th of January, but the plaintiff wasnt released from seg until febuary 21st 22 days later, twenty two hundred dollars.

) Plaintiff seeks recovery cost for the filing of this complaint. 400 dollars

) Plaintiff seeks recovery cost for the lost commissary food items due to the seg time. 18 dollars

) Plaintiff Jackson asks that he does not be retaliated against for the filing of this lawsuit by any of the defendants in this claim.

13.

Each Defendant is sued individually in their official capacity.

Plaintiff Request a trial by Jury ☑

Respectfully Submitted:

## Verification

I have read the foregoing complaint and hereby verify that the matter alleged therein are true, except as to matters alleged on information and behalf, and as to these, i believe them to be true, i certify under penalty of perjury that the foregoing is true and correct.

DATE: 4-19-18

Print: Kendrick Jackson R47228
Signature: Kendrick Jackson
P.O. Box 1000
Menard, Illinois 62259